# EXHIBIT 1

Approved, SCAO | Original - Court, 1st copy - Defendant | 2nd copy - Plaintiff, 3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| JUDICIAL DISTRICT; 7th JUDICIAL CIRCUIT; COUNTY PROBATE | SUMMONS | 23-118989 CB |

Court address: 900 Saginaw St., Flint, MI 48502

ELIZABETH A. KELLY P-71730

Court telephone no. 810-424-4355

Plaintiff's name(s), address(es), and telephone no(s).
Michigan Health Clinics, P. C.,

v

Defendant's name(s), address(es), and telephone no(s).
Dr. Wasim Nasir
4062 Overlea Ln.,
Bloomfield Hills, MI 48302

Dermatology & Cosmetic Center, PLLC,
2222 S. Linden Rd., Suite G,
Flint, MI 48532

Plaintiff's attorney, bar no., address, and telephone no.
Mark Merlanti (P35804)
Finkel Whitefield Feldman
32300 Northwestern Hwy., Suite 200
Farmington Hills, MI 48334
248-855-6500 mmerlanti@fwf-law.com

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ ______________________ Court, where it was given case number ______________ and assigned to Judge ______________.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 5/23/2023 | 8/20/2023 | [signature] |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

Michigan Health Clinics, P. C.,

*Plaintiff,*

*Case No* 23-118987 *CB*

*v.*

Dr. Wasim Nasir and Dermatology & Cosmetic Center, PLLC,

*Defendants, jointly and severally.*

ELIZABETH A. KELLY
P-71790

Mark Merlanti (P35804)
Finkel Whitefield Feldman
32300 Northwestern Hwy., Suite 200
Farmington Hills, MI 48334
248-855-6500
mmerlanti@fwf-law.com

A TRUE COPY
Genesee County Clerk

**COMPLAINT**

*(There is no other pending or resolved civil actions arising out of the transaction or occurrence alleged in the Complaint)*

NOW COMES, Plaintiff, Michigan Health Clinics, P. C., by and through its legal counsel, Finkel Whitefield Feldman, and for its Complaint against Defendants, Dr. Wasim Nasir and Dermatology & Cosmetic Center, PLLC, states:

## I. Common and Jurisdictional Allegations

1. Plaintiff, Michigan Health Clinics, P. C., ("Michigan Health"), is a Michigan professional corporation with principal offices located at 3925 Fortune Blvd., Saginaw, MI 48603.

2. On information and belief, Defendant, Dr. Wasim Nasir ("Defendant"), is an individual residing at 4062 Overlea Ln., Bloomfield Hills, MI 48302.

3. On information and belief, Defendant is an owner, officer and/or employee of an entity known as Dermatology & Cosmetic Center, PLLC, which has an address of and conducts operations from 2222 S. Linden Rd., Suite G, Flint, MI 48532.

4. On information and belief, Defendant Dermatology & Cosmetic Center, PLLC ("Defendant D & C"), is a Michigan PLLC, which has an address of and conducts operations from 2222 S. Linden Rd., Suite G, Flint, MI 48532.

5. On information and belief, Defendants do business in Genesee County.

6. The amount in controversy exceeds $25,000, exclusive of costs and interest and attorney fees.

**COUNT I - BREACH OF CONTRACT –**
**DEFENDANT NASIR - COMPENSATION PROVISIONS**

7. Plaintiff realleges and incorporates paragraphs 1 through 6.

8. On or about December 8, 2021, Plaintiff and Defendant executed an Employment Agreement with an agreed effective date of June 1, 2022. A copy of the executed Employment Agreement is attached and incorporated by reference as **Exhibit A**.

9. On or about January 19, 2023, Defendant sent a letter to Plaintiff indicating, inter alia, that Defendant terminated his employment with Plaintiff as of that date ("Resignation Letter").

10. The Employment Agreement at Section 1, describes, inter alia, the services to be rendered by Defendant to Plaintiff

11. The Employment Agreement at Section 2 contain terms regarding the compensation to be paid by Plaintiff to Defendant.

12. As disclosed by Plaintiff's records, Plaintiff collected $180,337[1] based upon services rendered by the Defendant during the term of the Employment Agreement.

[1] All amounts referenced in this Complaint are rounded for purposes of simplicity.

13. The Employment Agreement at Section 2.A., provides that Defendant will be paid 60% of amounts collected by Plaintiff for services rendered by Defendant during the term of the Agreement.

14. Based on the amount collected of $180,337 as above referenced, Defendant was entitled to compensation pursuant to Section 2. A., of the Employment Agreement in the amount of $108,202.30.

15. The Employment Agreement at Section 2. B., provides, inter alia, that Defendant will receive as additional compensation, 10% of dermatology services rendered by mid-level staff and collected by Plaintiff.

16. As disclosed by Plaintiff's records, Plaintiff collected $673,401 based upon billings by Jennifer Penning during the term of the Employment Agreement.

17. Defendant was entitled to compensation in the amount of $67,340 based upon the above referenced amount collected.

18. Defendant was paid compensation by Plaintiff in the amount of $180,000.

19. The total amounts owed to Defendant by Plaintiff based upon the amounts collected pursuant to Sections 2. A and B of the Employment Agreement as above described, total $175,542.

20. Defendant was overpaid by Plaintiff In the amount of $4,458.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount of $4,458, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT II - BREACH OF CONTRACT – DEFENDANT NASIR - FAILURE TO PROVIDE SERVICES FOLLOWING RESIGNATION**

21. Plaintiff realleges and incorporates paragraphs 1 through 20.

22. The Employment Agreement at Section 5. C., provides, inter alia, that either Plaintiff or Defendant may terminate the Employment Agreement upon 60 days written notice to the other party.

23. On or about January 19, 2023, Defendant provided a Resignation Letter to Plaintiff, as above described.

24. On or about January 20, 2023, Plaintiff advised Defendant that Plaintiff requested that Defendant continue to render services pursuant to his Employment Agreement for a period of 60 days.

25. Defendant failed and refused to provide services required of him pursuant to the Employment Agreement for any period following the date of the Resignation Letter.

26. As a result, Plaintiff lost revenues which would have been generated had Defendant performed services as requested.

27. Based upon the revenues generated by Defendant for Plaintiff during the period of his employment, Plaintiff estimates that revenues of $40,000 would have been generated and collected had Defendant rendered services for the 60 days following his resignation of employment with Plaintiff.

28. Plaintiff, pursuant to the Employment Agreement, he would have retained 40% of such amounts collected.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the loss of revenues of $40,000, increased by any additional expenses incurred as a result of the failure

of Defendant to render the requested services, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT III - BREACH OF CONTRACT - DEFENDANT NASIR - BREACH OF NON-SOLICITATION PROVISION**

29. Plaintiff realleges and incorporates paragraphs 1 through 28.

30. The Employment Agreement at Section 10. C., provides, inter alia, that Defendant will not solicit employees of Plaintiff or induce any employees to terminate their employment with the Plaintiff, including employees employed by Plaintiff in Saginaw County.

31. At the time Defendant terminated his employment with Plaintiff, Ms. Ryleigh Peitsch was employed by Plaintiff as a Nurse Practitioner in Saginaw County under a written Nurse Practitioner Employment Agreement, executed by Plaintiff and Ms. Peitsch on or about June 2, 2022, which provided, inter alia, an effective date of August 15, 2022 and that she was employed by Plaintiff for a three-year term.

32. Ms. Peitsch began her employment with Plaintiff on or about August 15, 2022, and generated approximately $30,000 per month in revenues for Plaintiff.

33. On information and belief, prior to and/or following Defendant's termination of his employment with Plaintiff, Defendant had communications with Ms. Peitsch.

34. On information and belief, during those communications, Defendant requested that Ms. Peitsch terminate (or consider terminating) her employment with Plaintiff.

35. On information and belief, during those communications, Defendant requested that Ms. Peitsch become (or consider becoming) an employee of Dermatology & Cosmetic Center, PLLC.

36. On information and belief, based on the above referenced communications between Defendant and Ms. Peitsch, she terminated her employment with Plaintiff.

37. Ms. Peitsch terminated her employment with Plaintiff on February 3, 2023.

38. On information and belief, at or about the time of her termination of her employment with Plaintiff, Ms. Peitsch became an employee of Dermatology & Cosmetic Center, PLLC.

39. On information and belief, the person at Dermatology & Cosmetic Center, PLLC who made the decision to hire Ms. Peitsch was the Defendant.

40. On information and belief, Ms. Peitsch is employed by Dermatology & Cosmetic Center, PLLC as a Nurse Practitioner (or some similar position).

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the loss of the revenues of $915,000 which would have been generated by Plaintiff based on the services of Ms. Peitsch during the 30.5 month period following her resignation through the end of her term of employment, plus any additional expenses incurred by Plaintiff as a result of the premature termination of the employment contract by Ms. Peitsch, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT IV – DEFENDANT NASIR - TORTIOUS INTERFERENCE WITH CONTRACT**

41. Plaintiff realleges and incorporates paragraphs 1 through 40.

42. Plaintiff had a contract with Ms. Peitsch, i.e.- the above referenced Nurse Practitioner Employment Agreement.

43. On information and belief, Defendant knew of the existence of the Nurse Practitioner Employment Agreement between Plaintiff and Ms. Peitsch.

44. As indicated, despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, Defendant had communications with her, including that she terminate (or consider terminating) her employment with Plaintiff.

45. As indicated, despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, Defendant had communications with her, including that she become (or consider becoming) an employee of Dermatology & Cosmetic Center, PLLC.

46. The conduct and communications described in the preceding two paragraphs were made by Defendant intentionally.

47. The conduct and communications by Defendant as described in the referenced two paragraphs were improper, for reasons including Section 10.C., of the Employment Agreement between Plaintiff and Defendant as well as the Agreement between Plaintiff and Ms. Peitsch.

48. On information and belief, the described conduct of Defendant and the referenced communications between Defendant and Ms. Peitsch caused Ms. Peitsch to terminate her Agreement with Plaintiff prior to the end of its term and not to extend the term of that Agreement.

49. Plaintiff sustained damages as a result of the termination of the employment of Ms. Peitsch with Plaintiff, for reasons including that Plaintiff will no longer receive the revenues based upon the services rendered by Ms. Peitsch to Plaintiff.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the loss of the revenues of $915,000 which would have been generated by Plaintiff based on the services of Ms. Peitsch during the 30.5 month period following her resignation through the end of

her term of employment, plus any additional expenses incurred by Plaintiff as a result of the premature termination of the employment contract by Ms. Peitsch, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT V - IMPROPER AUTHORIZATION REGARDING THE UTILIZATION OF THE PLAINTIFF'S CHARGING STATION**

50. Plaintiff realleges and incorporates paragraphs 1 through 49.

51. Plaintiff owns a charging station for the charging of electric vehicles, said charging Station is located in the parking lot of Plaintiff's office is located at 3925 Fortune Blvd., Saginaw, MI 46803.

52. On information and belief, Defendant permitted his brother, among possibly others, to utilize the charging station.

53. Defendant did not have authority to allow any persons to utilize the charging station.

54. On information and belief, Defendant's brother, utilized the charging station between the dates of September – November, 2022.

55. As a result of this unauthorized usage, Plaintiff incurred increased utility expenses with Consumers Energy, the amount of which is yet to be determined.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the increased utility bills resulting from the unauthorized use of the referenced charging station plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the

attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT VI – DEFENDANT D&C - TORTIOUS INTERFERENCE WITH CONTRACT**

56. Plaintiff realleges and incorporates paragraphs 1 through 55.

57. Plaintiff had a contract with Ms. Peitsch, i.e.- the above referenced Nurse Practitioner Employment Agreement.

58. On information and belief, Defendant D&C knew of the existence of the Nurse Practitioner Employment Agreement between Plaintiff and Ms. Peitsch.

59. Despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, on information and belief, Defendant D&C had communications with her, including that she terminate (or consider terminating) her employment with Plaintiff.

60. Despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, on information and belief, Defendant D&C had communications with her, including that she become (or consider becoming) an employee of Dermatology & Cosmetic Center, PLLC.

61. The conduct and communications described in the two referenced paragraphs were made by Defendant D&C intentionally.

62. The conduct and communications described in the preceding two paragraphs were taken at the direction of Defendant Nasir.

63. On information and belief, the described conduct of Defendant D&C and the referenced communications between Defendant D&C and Ms. Peitsch caused Ms. Peitsch to terminate her Agreement with Plaintiff prior to the end of its term.

64. On information and belief, the described conduct of Defendant D&C and the referenced communications between Defendant D&C and Ms. Peitsch were taken by Defendant or taken at the direction of Defendant.

65. Plaintiff sustained damages as a result of the termination of the employment of Ms. Peitsch with Plaintiff, for reasons including that Plaintiff will no longer receive the revenues based upon the services rendered by Ms. Peitsch to Plaintiff.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dermatology & Cosmetic Center, PLLC, in an amount representing its damages from the loss of the revenues of $915,000 which would have been generated by Plaintiff based on the services of Ms. Peitsch during the 30.5 month period following her resignation through the end of her term of employment, plus any additional expenses incurred by Plaintiff as a result of the premature termination of the employment contract by Ms. Peitsch, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

Respectfully submitted,
FINKEL WHITEFIELD FELDMAN

Dated: May 12, 2023

*/s/ Mark Merlanti*
Mark Merlanti (P35804)
Attorneys for Plaintiff
32300 Northwestern Hwy., Suite 200
Farmington Hills, MI 48334
248-855-6500
mmerlanti@fwf-law.com

# EXHIBIT A

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT, (Agreement), effective as of the January 1, 2022, by and between Michigan Health Clinics, P. C. a Michigan professional corporation (hereinafter referred to as "Employer"), and Wasim Nasir, M.D., (hereinafter referred to as "Employee"), is made and entered into at Saginaw, Michigan. Employer and Employee are each a Party and are collectively referred to as the Parties.

**1. Agreement to Perform Professional Services.** The Employer hereby engages the Employee to perform and the Employee hereby accepts such engagement and agrees to perform part-time services as a physician in connection with the professional practice conducted by the Employer and to perform such services as may be assigned by the Employer to the Employee in his capacity and medical field (dermatology) as directed by Employer. The duties of the Employee include acting as a supervising physician for mid-level staff (Nurse Practitioners and Physician Assistants) regarding the Dermatology practice of Employer. This includes providing such supervisor services when Employee is at the office of Employer and when Employee is not physically present (in which case the supervisory services may be handled by telephone or electronic communications with the mid-level staff). If the telephone or electronic communications are insufficient to provide the required supervisory services, Employee will so notify Employer in writing (via email, see Section 9), such that Employer may make arrangements to provide the proper supervision. Employee will provide general oversight services regarding the Dermatology practice of Employer. Employee may periodically consult with Employer on an as needed basis, regarding the supervisory and oversight responsibilities. The Employee further agrees to be and it is an express condition of this Agreement that the Employee at all times during the existence of the Agreement, be duly licensed to practice medicine in the State of Michigan, failing which, his employment and all rights and obligations under this Agreement, shall immediately terminate. Employee acknowledges that he is presently duly licensed to practice medicine in the State of Michigan.

**2. Compensation and Benefits;**

A. In consideration of Employee's services, during the Term of this Agreement, Employee shall be paid 60% of collections received pursuant toservices rendered by Employee under this Agreement during the Term, as Employee's compensation. This compensation will be paid pursuant to the following "twice monthly draw and adjustment" process (see Section C).

B. Employee will also receive as compensation, 10% of collections regarding dermatology services provided by said mid-level staff. This compensation will be paid at intervals of not less than 60 days and not more than 90 days, which payment dates may coincide with the following payment process (as stated at Section 2.C), at the discretion of Employer. This provision (2.B) will be reviewed by the Parties in approximately six months.

C. Compensation will be paid to Employee two times per month ("Draw Payment"), each payment in the amount of $2,500. All said Compensation (whether paid as a Draw Payment or pursuant to an adjustment as described below) is subject to the payroll policies of Employer, including all withholding for applicable Social Security and employment taxes and is subject to all federal, state and local taxes and expenses relating to employee compensation.

At intervals of not more frequently than every 60 days, but not less than 90 days, as determined by Employer, the amount of compensation paid to the Employee via the Draw Payments, will be reviewed to determine if the amount of those payments was less than or greater than 60% of the collections regarding the services rendered by Employee, as received by Employer for the period under review

In the event the compensation received for the period under review was less than 60% of collections, the shortage will be paid to Employee in the next one or two regular Draw Payments. In the event the compensation received for the period under review was greater than 60% of collections, the excess compensation will be deducted from the next one or two regular Draw Payments.

A similar adjustment will be made at the termination of this Agreement, said adjustment to be made not later than 60 days following the termination of this Agreement.

Employer shall provide Employee with fringe benefits and such bonuses only as determined by the Corporation's Board of Directors in its sole discretion. There is no requirement that Employee receive any fringe benefits or bonuses.

**3.** **Term**. The term of this Agreement shall commence on January 1, 2022, and shall continue until this Agreement is terminated, as provided in this Agreement.

**4.** **Schedule.** The Employee shall, during the continuance of this Agreement, perform services for Employer on an average of three full days per month, pursuant to a schedule as agreed upon by the Parties Presently, it is expected that Employee will render services on Fridays and/or such other days as may be mutually agreed to achieve the three day per month average.

**5.** **Termination.**

Note: The following does not limit the ability of Employer to terminate the Employment of Employee pursuant to other provisions contained in this Agreement.

A. Employee is an "at will" employee of Employer.

B. For purposes of clarity, Employer may immediately terminate the employment of Employee at any time, without prior notice, for cause. By way of example only, and not as a basis of limitation of the rights of Employer pursuant to this provision, a termination for cause may be invoked as a result of (1) material breaches of any representations made as contained in this Agreement and/or (2) non-performance of the duties of the Employee after having been provided with a written opportunity to cure such deficiencies of a reasonable time, unless the breach is of such a nature as to warrant immediate termination in the sole discretion of Employer, including but not limited to improper conduct toward any patient, business invitee, guest and/or other employee of Employer, conduct involving a crime of moral turpitude or of a crime or other conduct adversely affecting Employee's licenses, certifications or ability to receive third-party reimbursement.

C. The Employer or the Employee may terminate this Agreement at any time without cause, upon sixty (60) days' written notice to the other party. In this event, the Employee, if requested by the Employer, shall continue to render his services, and shall be paid his regular compensation up to the date of termination.

D. If the Employee dies during the term of this Agreement, this Agreement shall terminate as of the date of Employee's death.

E. Upon the termination of this Agreement, Employee shall immediately return to Employer all confidential documents and information, wherever located, and will not retain copies of any said documents or information.

F. Upon the termination of this Agreement, Employee shall immediately return to Employer all property of Employer in the possession and/or control of Employee, including keys, key fobs, access cards, access codes, credit cards, electronic equipment (such as cell phones and computers) documents and equipment.

**6.** **Compensation Upon Termination.** Upon any termination of this Agreement, Employee shall receive all compensation due to him under this Agreement through the final date of his services to Employer, subject to applicable adjustments pursuant to Section 2.

**7.** **Reassignment of Benefits.** Employee shall reassign to the Corporation and execute any third party payment documents necessary to direct the reassignment of any and all reimbursement due Employee for his professional services from patients or third party payors with whom Employer has a participation agreement.

**8.** **Incapacity.** If the Employee should become incapacitated due to illness or injury, and substantially prevented from performing his duties hereunder, the Employee shall receive his regular compensation as provided in Paragraph 2 hereof, subject to applicable adjustments, during the first sixty (60) days of such incapacity, less any amounts paid to him under disability income insurance policies (and less any required withholdings), the premiums for which have been paid by the Employer. If the Employee shall be incapacitated for a period exceeding sixty (60) continuous days, such incapacity shall, at the option of the Employer, constitute a termination of Employee's employment.

**9.** **Notices.** The tendering of notices from one Party to the other Party, shall be as follows:

Notices to Employer shall be addressed to Dr. David Stockman and sent to the following street address by first class mail and to the following email address by email:

1. 3925 Fortune Blvd., Saginaw, MI 48603
   and by email to: David Stockman dstockman@mihealthclinic.com

2. Notices to Employee shall be addressed to Dr. Wasim Nasir and sent to the following street address by first class mail and to the following email address by email:

   4062 Overlea Lane
   Bloomfield Hills MI 48302
   and by email to: wnasir3@gmail.com

**10.** **Covenant Not to Compete/non Solicitation of Employees/non Disclosure of Confidential Information.** Upon termination of employment of Employee, whether voluntary or involuntary, Employee shall not , for a period of two (2) years from such date of termination ("Restrictive Period") and within Saginaw County: :

A. Own, finance, serve as an officer, director, or member of any governing board of, or lend Employee's name to, any business or person whose services compete with the dermatology services provided by Employer (a Competitor);

B. (1) Be employed by, advise, consult with or manage any Competitor with respect to performance, management and/or administration of dermatology services, or (2) be employed by, advise, consult with or manage any hospital or health care organization or similar organization with respect to performance, management and/or administration of dermatology services located in Saginaw County

C. Whether for Employee's own account or the account of any other person, (i) solicit, as an employee, independent contractor or otherwise, any employee or independent contractor of Employer or in any manner induce or attempt to induce any employee/independent contractor of Employer, to terminate his/her employment or his/her business relationship with Employer, in each case with respect to a business whose activates compete in whole or in part with the activities of Employer in any area; or (ii) interfere with Employer's relationship with any person, including any person who is an employee, contractor, supplier or customer of Employer in the Restricted Area.

D. During the term of this Agreement and thereafter, Employee will not disclose to any person or entity the confidential information of Employer, including the customers of Employer, contracts of Employer, business practices and/or business strategies and plans of Employer and other information known only to Employer.

E. The parties intend to protect and preserve the business and goodwill associated with the Employer. If any court of competent jurisdiction shall at any time deem the Restricted Period too lengthy or the Restricted Area too broad, or the scope of these covenants too broad, the Restricted Period and Restricted Area shall be deemed to be shortened to the longest period permissible by law, and the scope of the covenants shall be deemed to be limited to comprise the broadest scope permissible by law under the circumstances.

F. Employee recognizes and acknowledges that in the event of any default in, or breach of any of, the terms, conditions, or provisions of this Agreement (either actual or threatened) by Employee, Employer's remedies at law will be inadequate. Accordingly, if Employee shall breach any of the covenants set forth in this Agreement (either actual or threatened), Employer shall be entitled to one or more of the following remedies, which shall be cumulative (I) actual damages incurred as a result of the breach, (II) injunctive or other equitable relief prohibiting Employee from continuing to engage in the prohibited activities, and (III) other legal and equitable remedies as may be available under law and Employer shall not be obligated to post bond or other security In seeking such relief.

**11. Entire Agreement /Amendments/Waiver.** This Agreement contains the entire agreement of the Parties regarding this subject matter and supersedes and replaces any prior written and/or verbal understandings and/or agreements. No amendments or modifications of this Agreement shall be binding upon the Parties unless made in writing signed by the Parties. Any and all waivers of any rights and/or obligations of the Parties, should any such waivers occur, does/do not operate as a continuing waiver of any of the rights and obligations of the Parties, (including the rights and/or obligations previously waived) and either Party may demand strict compliance at any time and without prior notice, regardless of prior waivers.

**12. Binding Effect.** This Agreement shall bind and benefit the parties and their respective legal representatives, executors, administrators, subsidiaries, successors and assigns.

**13. Governing Law.** This Agreement shall be governed by the laws of the State of Michigan.

**14. Representation.** The parties acknowledge that legal counsel, the law firm of Finkel Whitefield Selik ("Company Counsel"), in preparing this Agreement was representing the Employer, and that:

A. Company Counsel prepared this Agreement at the request of the Employer; and

B. Employee has been advised to seek the advice of independent counsel; and

C. Employee had the opportunity to seek the advice of independent counsel prior to executing this Agreement; and

D. Employee has had all information necessary to make an informed decision with regard to this Agreement and that any claims against said Company Counsel regarding any possible conflict of interest with regard to this Agreement or its preparation are waived by Employee.

**15. Execution in Counterparts and Electronically.** This Agreement may be executed in any number of counterparts, each of which for all purposes is deemed to be an original, and all of which, collectively, will constitute one agreement. A copy of any signature, whether transmitted by mail, email, or facsimile, shall be as valid and binding as an original signature.

**16. Severability of Provisions.** If any provision of this Agreement or the application hereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable under the governing law, the remainder of this Agreement and the application of such provision to any other person or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law, as necessary to enforce the intent of the Parties regarding this Agreement. The Parties agree that the terms of the Agreement shall be construed in a manner designed to make it valid and enforceable to the fullest extent possible.

**17. Malpractice Coverage.** Employee confirms that he has or will arrange for malpractice coverage (at Employer's expense) which will cover services rendered by Employee to Employer under this Agreement. Employee will provide written evidence of the existence and/or acquisition of such malpractice coverage to Employer prior to the effective date of this Agreement. Should Employee fail to do so, Employer may (1) acquire applicable malpractice insurance to cover services rendered by Employee to Employer under this Agreement and deduct the cost of said insurance from the compensation paid to Employee (via deductions from Draw Payments) or (2), at the option of Employer, terminate this Agreement. Employer will pay the malpractice premiums directly to the provider or reimburse the Employee, as applicable, upon receiving

appropriate documentation from Employee establishing coverage pursuant to this Section and payment by the Employee of the premiums, if applicable..

**EMPLOYEE ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND IS VOLUNTARILY ENTERING INTO IT.**

IN WITNESS HEREOF, the Parties have set their hands, including the placing of their initials on each page, this 8th day of December, 2021.

12/8/2021
Date

EMPLOYEE

Dr. Wasim Nasir

EMPLOYER
Michigan Health Clinics P.C.

12/8/21
Date

By: ____________
Dr. David Stockman, Owner and President

Approved, SCAO | Original - Court, 1st copy - Defendant | 2nd copy - Plaintiff, 3rd copy - Return

| STATE OF MICHIGAN | SUMMONS | CASE NO. |
|---|---|---|
| JUDICIAL DISTRICT<br>7th JUDICIAL CIRCUIT<br>COUNTY PROBATE | | 23-118989 CB |

Court address: 900 Saginaw St., Flint, MI 48502

ELIZABETH A. KELLY P-71730

Court telephone no. 810-424-4355

| Plaintiff's name(s), address(es), and telephone no(s). | v | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Michigan Health Clinics, P. C., | | Dr. Wasim Nasir<br>4062 Overlea Ln.,<br>Bloomfield Hills, MI 48302<br><br>Dermatology & Cosmetic Center, PLLC,<br>2222 S. Linden Rd., Suite G,<br>Flint, MI 48532 |
| Plaintiff's attorney, bar no., address, and telephone no.<br>Mark Merlanti (P35804)<br>Finkel Whitefield Feldman<br>32300 Northwestern Hwy., Suite 200<br>Farmington Hills, MI 48334<br>248-855-6500 mmerlanti@fwf-law.com | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ ______________________ Court, where it was given case number ______________ and assigned to Judge ______________________.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 5/22/2023 | 8/20/2023 | Devin M Edwardson |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE**

Michigan Health Clinics, P. C.,

*Plaintiff,*

*Case No* 23-118989 *CB*

*v.*

ELIZABETH A. KELLY
P-71790

Dr. Wasim Nasir and Dermatology & Cosmetic Center, PLLC,

*Defendants, jointly and severally.*

______________________________/

Mark Merlanti (P35804)
Finkel Whitefield Feldman
32300 Northwestern Hwy., Suite 200
Farmington Hills, MI 48334
248-855-6500
mmerlanti@fwf-law.com

______________________________/

A TRUE COPY
Genesee County Clerk

**COMPLAINT**

*(There is no other pending or resolved civil actions arising out of the transaction or occurrence alleged in the Complaint)*

NOW COMES, Plaintiff, Michigan Health Clinics, P. C., by and through its legal counsel, Finkel Whitefield Feldman, and for its Complaint against Defendants, Dr. Wasim Nasir and Dermatology & Cosmetic Center, PLLC, states:

**I. Common and Jurisdictional Allegations**

1. Plaintiff, Michigan Health Clinics, P. C., ("Michigan Health"), is a Michigan professional corporation with principal offices located at 3925 Fortune Blvd., Saginaw, MI 48603.

2. On information and belief, Defendant, Dr. Wasim Nasir ("Defendant"), is an individual residing at 4062 Overlea Ln., Bloomfield Hills, MI 48302.

3. On information and belief, Defendant is an owner, officer and/or employee of an entity known as Dermatology & Cosmetic Center, PLLC, which has an address of and conducts operations from 2222 S. Linden Rd., Suite G, Flint, MI 48532.

4. On information and belief, Defendant Dermatology & Cosmetic Center, PLLC ("Defendant D & C"), is a Michigan PLLC, which has an address of and conducts operations from 2222 S. Linden Rd., Suite G, Flint, MI 48532.

5. On information and belief, Defendants do business in Genesee County.

6. The amount in controversy exceeds $25,000, exclusive of costs and interest and attorney fees.

**COUNT I - BREACH OF CONTRACT – DEFENDANT NASIR - COMPENSATION PROVISIONS**

7. Plaintiff realleges and incorporates paragraphs 1 through 6.

8. On or about December 8, 2021, Plaintiff and Defendant executed an Employment Agreement with an agreed effective date of June 1, 2022. A copy of the executed Employment Agreement is attached and incorporated by reference as **Exhibit A**.

9. On or about January 19, 2023, Defendant sent a letter to Plaintiff indicating, inter alia, that Defendant terminated his employment with Plaintiff as of that date ("Resignation Letter").

10. The Employment Agreement at Section 1, describes, inter alia, the services to be rendered by Defendant to Plaintiff

11. The Employment Agreement at Section 2 contain terms regarding the compensation to be paid by Plaintiff to Defendant.

12. As disclosed by Plaintiff's records, Plaintiff collected $180,337[1] based upon services rendered by the Defendant during the term of the Employment Agreement.

[1] All amounts referenced in this Complaint are rounded for purposes of simplicity.

13. The Employment Agreement at Section 2.A., provides that Defendant will be paid 60% of amounts collected by Plaintiff for services rendered by Defendant during the term of the Agreement.

14. Based on the amount collected of $180,337 as above referenced, Defendant was entitled to compensation pursuant to Section 2. A., of the Employment Agreement in the amount of $108,202.30.

15. The Employment Agreement at Section 2. B., provides, inter alia, that Defendant will receive as additional compensation, 10% of dermatology services rendered by mid-level staff and collected by Plaintiff.

16. As disclosed by Plaintiff's records, Plaintiff collected $673,401 based upon billings by Jennifer Penning during the term of the Employment Agreement.

17. Defendant was entitled to compensation in the amount of $67,340 based upon the above referenced amount collected.

18. Defendant was paid compensation by Plaintiff in the amount of $180,000.

19. The total amounts owed to Defendant by Plaintiff based upon the amounts collected pursuant to Sections 2. A and B of the Employment Agreement as above described, total $175,542.

20. Defendant was overpaid by Plaintiff In the amount of $4,458.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount of $4,458, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT II - BREACH OF CONTRACT – DEFENDANT NASIR - FAILURE TO PROVIDE SERVICES FOLLOWING RESIGNATION**

21. Plaintiff realleges and incorporates paragraphs 1 through 20.

22. The Employment Agreement at Section 5. C., provides, inter alia, that either Plaintiff or Defendant may terminate the Employment Agreement upon 60 days written notice to the other party.

23. On or about January 19, 2023, Defendant provided a Resignation Letter to Plaintiff, as above described.

24. On or about January 20, 2023, Plaintiff advised Defendant that Plaintiff requested that Defendant continue to render services pursuant to his Employment Agreement for a period of 60 days.

25. Defendant failed and refused to provide services required of him pursuant to the Employment Agreement for any period following the date of the Resignation Letter.

26. As a result, Plaintiff lost revenues which would have been generated had Defendant performed services as requested.

27. Based upon the revenues generated by Defendant for Plaintiff during the period of his employment, Plaintiff estimates that revenues of $40,000 would have been generated and collected had Defendant rendered services for the 60 days following his resignation of employment with Plaintiff.

28. Plaintiff, pursuant to the Employment Agreement, he would have retained 40% of such amounts collected.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the loss of revenues of $40,000, increased by any additional expenses incurred as a result of the failure

of Defendant to render the requested services, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT III - BREACH OF CONTRACT - DEFENDANT NASIR - BREACH OF NON-SOLICITATION PROVISION**

29. Plaintiff realleges and incorporates paragraphs 1 through 28.

30. The Employment Agreement at Section 10. C., provides, inter alia, that Defendant will not solicit employees of Plaintiff or induce any employees to terminate their employment with the Plaintiff, including employees employed by Plaintiff in Saginaw County.

31. At the time Defendant terminated his employment with Plaintiff, Ms. Ryleigh Peitsch was employed by Plaintiff as a Nurse Practitioner in Saginaw County under a written Nurse Practitioner Employment Agreement, executed by Plaintiff and Ms. Peitsch on or about June 2, 2022, which provided, inter alia, an effective date of August 15, 2022 and that she was employed by Plaintiff for a three-year term.

32. Ms. Peitsch began her employment with Plaintiff on or about August 15, 2022, and generated approximately $30,000 per month in revenues for Plaintiff.

33. On information and belief, prior to and/or following Defendant's termination of his employment with Plaintiff, Defendant had communications with Ms. Peitsch.

34. On information and belief, during those communications, Defendant requested that Ms. Peitsch terminate (or consider terminating) her employment with Plaintiff.

35. On information and belief, during those communications, Defendant requested that Ms. Peitsch become (or consider becoming) an employee of Dermatology & Cosmetic Center, PLLC.

36. On information and belief, based on the above referenced communications between Defendant and Ms. Peitsch, she terminated her employment with Plaintiff.

37. Ms. Peitsch terminated her employment with Plaintiff on February 3, 2023.

38. On information and belief, at or about the time of her termination of her employment with Plaintiff, Ms. Peitsch became an employee of Dermatology & Cosmetic Center, PLLC.

39. On information and belief, the person at Dermatology & Cosmetic Center, PLLC who made the decision to hire Ms. Peitsch was the Defendant.

40. On information and belief, Ms. Peitsch is employed by Dermatology & Cosmetic Center, PLLC as a Nurse Practitioner (or some similar position).

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the loss of the revenues of $915,000 which would have been generated by Plaintiff based on the services of Ms. Peitsch during the 30.5 month period following her resignation through the end of her term of employment, plus any additional expenses incurred by Plaintiff as a result of the premature termination of the employment contract by Ms. Peitsch, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT IV – DEFENDANT NASIR - TORTIOUS INTERFERENCE WITH CONTRACT**

41. Plaintiff realleges and incorporates paragraphs 1 through 40.

42. Plaintiff had a contract with Ms. Peitsch, i.e.- the above referenced Nurse Practitioner Employment Agreement.

43. On information and belief, Defendant knew of the existence of the Nurse Practitioner Employment Agreement between Plaintiff and Ms. Peitsch.

44. As indicated, despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, Defendant had communications with her, including that she terminate (or consider terminating) her employment with Plaintiff.

45. As indicated, despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, Defendant had communications with her, including that she become (or consider becoming) an employee of Dermatology & Cosmetic Center, PLLC.

46. The conduct and communications described in the preceding two paragraphs were made by Defendant intentionally.

47. The conduct and communications by Defendant as described in the referenced two paragraphs were improper, for reasons including Section 10.C., of the Employment Agreement between Plaintiff and Defendant as well as the Agreement between Plaintiff and Ms. Peitsch.

48. On information and belief, the described conduct of Defendant and the referenced communications between Defendant and Ms. Peitsch caused Ms. Peitsch to terminate her Agreement with Plaintiff prior to the end of its term and not to extend the term of that Agreement.

49. Plaintiff sustained damages as a result of the termination of the employment of Ms. Peitsch with Plaintiff, for reasons including that Plaintiff will no longer receive the revenues based upon the services rendered by Ms. Peitsch to Plaintiff.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the loss of the revenues of $915,000 which would have been generated by Plaintiff based on the services of Ms. Peitsch during the 30.5 month period following her resignation through the end of

her term of employment, plus any additional expenses incurred by Plaintiff as a result of the premature termination of the employment contract by Ms. Peitsch, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT V - IMPROPER AUTHORIZATION REGARDING THE UTILIZATION OF THE PLAINTIFF'S CHARGING STATION**

50. Plaintiff realleges and incorporates paragraphs 1 through 49.

51. Plaintiff owns a charging station for the charging of electric vehicles, said charging Station is located in the parking lot of Plaintiff's office is located at 3925 Fortune Blvd., Saginaw, MI 46803.

52. On information and belief, Defendant permitted his brother, among possibly others, to utilize the charging station.

53. Defendant did not have authority to allow any persons to utilize the charging station.

54. On information and belief, Defendant's brother, utilized the charging station between the dates of September – November, 2022.

55. As a result of this unauthorized usage, Plaintiff incurred increased utility expenses with Consumers Energy, the amount of which is yet to be determined.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dr. Wassim Nasir, in an amount representing its damages from the increased utility bills resulting from the unauthorized use of the referenced charging station plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the

attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

**COUNT VI – DEFENDANT D&C - TORTIOUS INTERFERENCE WITH CONTRACT**

56. Plaintiff realleges and incorporates paragraphs 1 through 55.

57. Plaintiff had a contract with Ms. Peitsch, i.e.- the above referenced Nurse Practitioner Employment Agreement.

58. On information and belief, Defendant D&C knew of the existence of the Nurse Practitioner Employment Agreement between Plaintiff and Ms. Peitsch.

59. Despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, on information and belief, Defendant D&C had communications with her, including that she terminate (or consider terminating) her employment with Plaintiff.

60. Despite knowledge of that Agreement between Plaintiff and Ms. Peitsch, on information and belief, Defendant D&C had communications with her, including that she become (or consider becoming) an employee of Dermatology & Cosmetic Center, PLLC.

61. The conduct and communications described in the two referenced paragraphs were made by Defendant D&C intentionally.

62. The conduct and communications described in the preceding two paragraphs were taken at the direction of Defendant Nasir.

63. On information and belief, the described conduct of Defendant D&C and the referenced communications between Defendant D&C and Ms. Peitsch caused Ms. Peitsch to terminate her Agreement with Plaintiff prior to the end of its term.

64. On information and belief, the described conduct of Defendant D&C and the referenced communications between Defendant D&C and Ms. Peitsch were taken by Defendant or taken at the direction of Defendant.

65. Plaintiff sustained damages as a result of the termination of the employment of Ms. Peitsch with Plaintiff, for reasons including that Plaintiff will no longer receive the revenues based upon the services rendered by Ms. Peitsch to Plaintiff.

WHEREFORE, Plaintiff, Michigan Health Clinics, P.C., requests that this Court enter Judgment against Defendant, Dermatology & Cosmetic Center, PLLC, in an amount representing its damages from the loss of the revenues of $915,000 which would have been generated by Plaintiff based on the services of Ms. Peitsch during the 30.5 month period following her resignation through the end of her term of employment, plus any additional expenses incurred by Plaintiff as a result of the premature termination of the employment contract by Ms. Peitsch, plus statutory interest, Plaintiff's costs and a reasonable attorney fee to compensate Plaintiff for the attorney fees incurred in this action, together with any other legal and/or equitable relief to which Plaintiff is entitled.

Respectfully submitted,
FINKEL WHITEFIELD FELDMAN

Dated: May 12, 2023

/s/ Mark Merlanti
Mark Merlanti (P35804)
Attorneys for Plaintiff
32300 Northwestern Hwy., Suite 200
Farmington Hills, MI 48334
248-855-6500
mmerlanti@fwf-law.com

# EXHIBIT A

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT, (Agreement), effective as of the January 1, 2022, by and between Michigan Health Clinics, P. C. a Michigan professional corporation (hereinafter referred to as "Employer"), and Wasim Nasir, M.D., (hereinafter referred to as "Employee"), is made and entered into at Saginaw, Michigan. Employer and Employee are each a Party and are collectively referred to as the Parties.

**1. Agreement to Perform Professional Services.** The Employer hereby engages the Employee to perform and the Employee hereby accepts such engagement and agrees to perform part-time services as a physician in connection with the professional practice conducted by the Employer and to perform such services as may be assigned by the Employer to the Employee in his capacity and medical field (dermatology) as directed by Employer. The duties of the Employee include acting as a supervising physician for mid-level staff (Nurse Practitioners and Physician Assistants) regarding the Dermatology practice of Employer. This includes providing such supervisor services when Employee is at the office of Employer and when Employee is not physically present (in which case the supervisory services may be handled by telephone or electronic communications with the mid-level staff). If the telephone or electronic communications are insufficient to provide the required supervisory services, Employee will so notify Employer in writing (via email, see Section 9), such that Employer may make arrangements to provide the proper supervision. Employee will provide general oversight services regarding the Dermatology practice of Employer. Employee may periodically consult with Employer on an as needed basis, regarding the supervisory and oversight responsibilities. The Employee further agrees to be and it is an express condition of this Agreement that the Employee at all times during the existence of the Agreement, be duly licensed to practice medicine in the State of Michigan, failing which, his employment and all rights and obligations under this Agreement, shall immediately terminate. Employee acknowledges that he is presently duly licensed to practice medicine in the State of Michigan.

**2. Compensation and Benefits:**

A. In consideration of Employee's services, during the Term of this Agreement, Employee shall be paid 60% of collections received pursuant toservices rendered by Employee under this Agreement during the Term, as Employee's compensation. This compensation will be paid pursuant to the following "twice monthly draw and adjustment" process (see Section C).

B. Employee will also receive as compensation, 10% of collections regarding dermatology services provided by said mid-level staff. This compensation will be paid at intervals of not less than 60 days and not more than 90 days, which payment dates may coincide with the following payment process (as stated at Section 2.C), at the discretion of Employer. This provision (2.B) will be reviewed by the Parties in approximately six months.

C. Compensation will be paid to Employee two times per month ("Draw Payment"), each payment in the amount of $2,500. All said Compensation (whether paid as a Draw Payment or pursuant to an adjustment as described below) is subject to the payroll policies of Employer, including all withholding for applicable Social Security and employment taxes and is subject to all federal, state and local taxes and expenses relating to employee compensation.

At intervals of not more frequently than every 60 days, but not less than 90 days, as determined by Employer, the amount of compensation paid to the Employee via the Draw Payments, will be reviewed to determine if the amount of those payments was less than or greater than 60% of the collections regarding the services rendered by Employee, as received by Employer for the period under review

In the event the compensation received for the period under review was less than 60% of collections, the shortage will be paid to Employee in the next one or two regular Draw Payments. In the event the compensation received for the period under review was greater than 60% of collections, the excess compensation will be deducted from the next one or two regular Draw Payments.

A similar adjustment will be made at the termination of this Agreement, said adjustment to be made not later than 60 days following the termination of this Agreement.

Employer shall provide Employee with fringe benefits and such bonuses only as determined by the Corporation's Board of Directors in its sole discretion. There is no requirement that Employee receive any fringe benefits or bonuses.

**3.** **Term**. The term of this Agreement shall commence on January 1, 2022, and shall continue until this Agreement is terminated, as provided in this Agreement.

**4.** **Schedule.** The Employee shall, during the continuance of this Agreement, perform services for Employer on an average of three full days per month, pursuant to a schedule as agreed upon by the Parties Presently, it is expected that Employee will render services on Fridays and/or such other days as may be mutually agreed to achieve the three day per month average.

**5.** **Termination.**

Note: The following does not limit the ability of Employer to terminate the Employment of Employee pursuant to other provisions contained in this Agreement.

A. Employee is an "at will" employee of Employer.

B. For purposes of clarity, Employer may immediately terminate the employment of Employee at any time, without prior notice, for cause. By way of example only, and not as a basis of limitation of the rights of Employer pursuant to this provision, a termination for cause may be invoked as a result of (1) material breaches of any representations made as contained in this Agreement and/or (2) non-performance of the duties of the Employee after having been provided with a written opportunity to cure such deficiencies of a reasonable time, unless the breach is of such a nature as to warrant immediate termination in the sole discretion of Employer, including but not limited to improper conduct toward any patient, business invitee, guest and/or other employee of Employer, conduct involving a crime of moral turpitude or of a crime or other conduct adversely affecting Employee's licenses, certifications or ability to receive third-party reimbursement.

C. The Employer or the Employee may terminate this Agreement at any time without cause, upon sixty (60) days' written notice to the other party. In this event, the Employee, if requested by the Employer, shall continue to render his services, and shall be paid his regular compensation up to the date of termination.

D. If the Employee dies during the term of this Agreement, this Agreement shall terminate as of the date of Employee's death.

E. Upon the termination of this Agreement, Employee shall immediately return to Employer all confidential documents and information, wherever located, and will not retain copies of any said documents or information.

F. Upon the termination of this Agreement, Employee shall immediately return to Employer all property of Employer in the possession and/or control of Employee, including keys, key fobs, access cards, access codes, credit cards, electronic equipment (such as cell phones and computers) documents and equipment.

**6.** **Compensation Upon Termination.** Upon any termination of this Agreement, Employee shall receive all compensation due to him under this Agreement through the final date of his services to Employer, subject to applicable adjustments pursuant to Section 2.

**7.** **Reassignment of Benefits.** Employee shall reassign to the Corporation and execute any third party payment documents necessary to direct the reassignment of any and all reimbursement due Employee for his professional services from patients or third party payors with whom Employer has a participation agreement.

**8.** **Incapacity.** If the Employee should become incapacitated due to illness or injury, and substantially prevented from performing his duties hereunder, the Employee shall receive his regular compensation as provided in Paragraph 2 hereof, subject to applicable adjustments, during the first sixty (60) days of such incapacity, less any amounts paid to him under disability income insurance policies (and less any required withholdings), the premiums for which have been paid by the Employer. If the Employee shall be incapacitated for a period exceeding sixty (60) continuous days, such incapacity shall, at the option of the Employer, constitute a termination of Employee's employment.

**9.** **Notices.** The tendering of notices from one Party to the other Party, shall be as follows:

Notices to Employer shall be addressed to Dr. David Stockman and sent to the following street address by first class mail and to the following email address by email:

1. 3925 Fortune Blvd., Saginaw, MI 48603
   and by email to: David Stockman dstockman@mihealthclinic.com

2. Notices to Employee shall be addressed to Dr. Wasim Nasir and sent to the following street address by first class mail and to the following email address by email:

   4062 Overlea Lane
   Bloomfield Hills MI 48302
   and by email to: wnasir3@gmail.com

**10.** **Covenant Not to Compete/non Solicitation of Employees/non Disclosure of Confidential Information.** Upon termination of employment of Employee, whether voluntary or involuntary, Employee shall not , for a period of two (2) years from such date of termination ("Restrictive Period") and within Saginaw County: :

A. Own, finance, serve as an officer, director, or member of any governing board of, or lend Employee's name to, any business or person whose services compete with the dermatology services provided by Employer (a Competitor);

B. (1) Be employed by, advise, consult with or manage any Competitor with respect to performance, management and/or administration of dermatology services, or (2) be employed by, advise, consult with or manage any hospital or health care organization or similar organization with respect to performance, management and/or administration of dermatology services located in Saginaw County

C. Whether for Employee's own account or the account of any other person, (i) solicit, as an employee, independent contractor or otherwise, any employee or independent contractor of Employer or in any manner induce or attempt to induce any employee/independent contractor of Employer, to terminate his/her employment or his/her business relationship with Employer, in each case with respect to a business whose activates compete in whole or in part with the activities of Employer in any area; or (ii) interfere with Employer's relationship with any person, including any person who is an employee, contractor, supplier or customer of Employer in the Restricted Area.

D. During the term of this Agreement and thereafter, Employee will not disclose to any person or entity the confidential information of Employer, including the customers of Employer, contracts of Employer, business practices and/or business strategies and plans of Employer and other information known only to Employer.

E. The parties intend to protect and preserve the business and goodwill associated with the Employer. If any court of competent jurisdiction shall at any time deem the Restricted Period too lengthy or the Restricted Area too broad, or the scope of these covenants too broad, the Restricted Period and Restricted Area shall be deemed to be shortened to the longest period permissible by law, and the scope of the covenants shall be deemed to be limited to comprise the broadest scope permissible by law under the circumstances.

F. Employee recognizes and acknowledges that in the event of any default in, or breach of any of, the terms, conditions, or provisions of this Agreement (either actual or threatened) by Employee, Employer's remedies at law will be inadequate. Accordingly, if Employee shall breach any of the covenants set forth in this Agreement (either actual or threatened), Employer shall be entitled to one or more of the following remedies, which shall be cumulative (I) actual damages incurred as a result of the breach, (II) injunctive or other equitable relief prohibiting Employee from continuing to engage in the prohibited activities, and (III) other legal and equitable remedies as may be available under law and Employer shall not be obligated to post bond or other security In seeking such relief.

**11. Entire Agreement /Amendments/Waiver.** This Agreement contains the entire agreement of the Parties regarding this subject matter and supersedes and replaces any prior written and/or verbal understandings and/or agreements. No amendments or modifications of this Agreement shall be binding upon the Parties unless made in writing signed by the Parties. Any and all waivers of any rights and/or obligations of the Parties, should any such waivers occur, does/do not operate as a continuing waiver of any of the rights and obligations of the Parties, (including the rights and/or obligations previously waived) and either Party may demand strict compliance at any time and without prior notice, regardless of prior waivers.

**12. Binding Effect.** This Agreement shall bind and benefit the parties and their respective legal representatives, executors, administrators, subsidiaries, successors and assigns.

**13. Governing Law.** This Agreement shall be governed by the laws of the State of Michigan.

**14. Representation.** The parties acknowledge that legal counsel, the law firm of Finkel Whitefield Selik ("Company Counsel"), in preparing this Agreement was representing the Employer, and that:

A. Company Counsel prepared this Agreement at the request of the Employer; and

B. Employee has been advised to seek the advice of independent counsel; and

C. Employee had the opportunity to seek the advice of independent counsel prior to executing this Agreement; and

D. Employee has had all information necessary to make an informed decision with regard to this Agreement and that any claims against said Company Counsel regarding any possible conflict of interest with regard to this Agreement or its preparation are waived by Employee.

**15. Execution in Counterparts and Electronically.** This Agreement may be executed in any number of counterparts, each of which for all purposes is deemed to be an original, and all of which, collectively, will constitute one agreement. A copy of any signature, whether transmitted by mail, email, or facsimile, shall be as valid and binding as an original signature.

**16. Severability of Provisions.** If any provision of this Agreement or the application hereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable under the governing law, the remainder of this Agreement and the application of such provision to any other person or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law, as necessary to enforce the intent of the Parties regarding this Agreement. The Parties agree that the terms of the Agreement shall be construed in a manner designed to make it valid and enforceable to the fullest extent possible.

**17. Malpractice Coverage.** Employee confirms that he has or will arrange for malpractice coverage (at Employer's expense) which will cover services rendered by Employee to Employer under this Agreement. Employee will provide written evidence of the existence and/or acquisition of such malpractice coverage to Employer prior to the effective date of this Agreement. Should Employee fail to do so, Employer may (1) acquire applicable malpractice insurance to cover services rendered by Employee to Employer under this Agreement and deduct the cost of said insurance from the compensation paid to Employee (via deductions from Draw Payments) or (2), at the option of Employer, terminate this Agreement. Employer will pay the malpractice premiums directly to the provider or reimburse the Employee, as applicable, upon receiving

appropriate documentation from Employee establishing coverage pursuant to this Section and payment by the Employee of the premiums, if applicable..

**EMPLOYEE ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND IS VOLUNTARILY ENTERING INTO IT.**

IN WITNESS HEREOF, the Parties have set their hands, including the placing of their initials on each page, this 8th day of December, 2021.

12/8/2021
Date

EMPLOYEE

Dr. Wasim Nasir

EMPLOYER
Michigan Health Clinics P.C.

12/8/21
Date

By: [signature]
Dr. David Stockman, Owner and President

**SUMMONS**
Case No.

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

ELIZABETH A. KELLY
P-71790

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

☐ **OFFICER CERTIFICATE**
I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required)

OR

☐ **AFFIDAVIT OF PROCESS SERVER**
Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with ______________________________
List all documents served with the summons and complaint

______________________________ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | TOTAL FEE |
|---|---|---|---|
| $ | | $ | |
| Incorrect address fee | Miles traveled | Fee | |
| $ | | $ | $ |

______________________________
Signature

______________________________
Name (type or print)

______________________________
Title

Subscribed and sworn to before me on ______________ (Date), ______________ County, Michigan.

My commission expires: ______________ (Date) Signature: ______________________________ Deputy court clerk/Notary public

Notary public, State of Michigan, County of ______________________________

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with ______________ (Attachments)

______________________________ on ______________________________ (Day, date, time)

______________________________ (Signature) on behalf of ______________________________