# EXHIBIT 2

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

MICHIGAN HEALTH CLINICS, P.C.,

      Plaintiff/Counter-Defendant,

v.

DR. WASIM NASIR and DERMATOLOGY
& COSMETIC CENTER, PLLC,

      Defendants,

And

DR. WASIM NASIR, M.D.,

      Counter-Defendant,

v.

MICHIGAN HEALTH CLINICS, P.C.,

      Counter-Plaintiff,

And

DR. WASIM NASIR, M.D.,

      Third Party Plaintiff,

v.

DR. DAVID STOCKMAN,

      Third-Party Defendant.

Case No. 2023-118989-CB

Hon. **BRIAN S. PICKELL P-57411**

**Business Court Docket**

A TRUE COPY
GENESEE COUNTY CLERK

---

| | |
|---|---|
| Mark Merlanti (P35804)<br>Finkel Whitefield Feldman<br>32300 Northwestern Highway<br>Suite 200<br>Farmington Hills, MI 48334<br>*(248) 855-6500*<br>*mmerlanti@fwf-law.com*<br>*Attorney for Plaintiff* | BROOKS WILKINS SHARKEY & TURCO PLLC<br>Brad A. Danek (P72098)<br>401 S. Old Woodward, Suite 400<br>Birmingham, MI 48009<br>(248) 971-1800; Fax: (248) 971-1801<br>danek@bwst-law.com<br>*Attorneys for Nasir and Derm. & Cosmetic Center* |

---

1

## <u>VERIFIED COUNTER-COMPLAINT AND THIRD-PARTY COMPLAINT</u>

Now comes Defendant/Counter-Plaintiff, Dr. Wasim Nasir, M.D., by and through his attorneys, Brooks Wilkins Sharkey & Turco, PLLC, and for his verified counter-complaint against Michigan Health Clinics, P.C. and Complaint against Third-Party Defendant, Dr. David Stockman, states as follow:

### PARTIES, JURISDICTION, AND VENUE

1. Dr. Wasim Nasir (Dr. Nasir) is a medical doctor practicing in the area of dermatology, with a principal place of business in Flint, MI.

2. Michigan Health Clinics, P.C. (MHC) is a professional corporation with a principal place of business at 3925 Fortune Blvd, Saginaw, MI 48603.

3. Dr. David Stockman (Dr. Stockman) is the president of MHC, who provides dermatopathology services at MHC's office in Saginaw.

4. Venue is properly vested in this Court pursuant to MCL §600.715(1), §600.715(5), and §600.1621(a), because the parties regularly conduct business in Genesee County, Michigan, including entering the contract at issue which provides for legal disputes to be settled by courts located in Genesee County.

5. The jurisdiction of this Court is properly invoked because the amount in controversy is over $25,000 exclusive of attorneys' fees, interest, and costs.

### GENERAL ALLEGATIONS

6. MHC provides dermatology, family medicine, and rheumatology services to patients in Saginaw.

7. Dr. Nasir was employed at MHC, starting on January 1, 2022.

8. The terms of Dr. Nasir's employment are contained in an Employment Agreement, including MHC's agreement to pay wages to Dr. Nasir to perform part-time services as a physician.

9. The Employment Agreement is not attached hereto because it is in the possession of the opposing parties under MCR 2.113(C)(1)(b), and is attached to the Complaint already filed in this matter.

10. In reliance on the Employment Agreement, Dr. Nasir competently provided physician services to patients at MHC.

11. MHC failed to pay Dr. Nasir's wages, despite its obligations in the Employment Agreement,.

12. Upon information and belief, MHC, at the control and direction of Dr. Stockman, billed Medicare and/or Medicaid for Dr. Nasir's services.

13. As a result of the non-payment, and other intolerable working conditions at MHC, Dr. Nasir left MHC effective January 19, 2023.

14. On or about January 19, 2023, Dr. Nasir sent a letter to MHC and Dr. Stockman, advising Dr. Nasir was immediately terminating the Employment Agreement for, among other things, non-payment of wages.

15. The Employment Agreement required all compensation due to Dr. Nasir to be paid on the final date of service. (Employment Agreement at ¶6.)

16. MHC and Dr. Stockman failed to pay Dr. Nasir the compensation due on the final date of service, January 19, 2023, in breach of the Employment Agreement.

17. To settle the dispute over non-payment of wages, MHC, Dr. Stockman, and Dr. Nasir entered into an Employment Separation Agreement and Release of Employer Liability on or

about April 3, 2023 ("Separation Agreement"). The Separation Agreement is attached hereto as Exhibit A.

18.     The Separation Agreement had an effective date of April 3, 2023. (**Ex. A**, Separation Agreement at Recital B.)

19.     The Separation Agreement requires any action arising out of the Employment Agreement or the Separation Agreement to be brought only in a state court located in Genesee County, Michigan.  (**Ex. A**)

20.     The "Employer" defined in the Separation Agreement includes both MHC and Dr. Stockman. (**Ex. A**, Separation Agreement at Recital D.)

21.     MHC and Dr. Stockman agreed in the Separation Agreement to pay Dr. Nasir $65,000, identified as "any and all amounts to which [Dr. Nasir] is entitled based on his employment with [MHC and Dr. Stockman]. . . [.]" (**Ex. A**, Separation Agreement at ¶2.)

22.     Neither MHC, nor Dr. Stockman, paid Dr. Nasir the $65,000.

23.     Despite the non-payment, Dr. Stockman contacted Dr. Nasir after the effective date in attempt to enforce other provisions of the Separation Agreement.

24.     On April 21, 2023, counsel for MHC and Dr. Stockman sent a letter to counsel for Dr. Nasir, asserting the Separation Agreement was enforceable, despite non-payment of the $65,000.

25.     On April 24, 2023, counsel for Dr. Nasir sent a letter to counsel for MHC and Dr. Stockman, demanding payment of the $65,000 for past due wages to avoid litigation. No response was received. Instead, MHC filed a lawsuit against Dr. Nasir in Genessee County.

### COUNT I – BREACH OF CONTRACT
**(Separation Agreement – MHC and Dr. Stockman)**

26.  Dr. Nasir incorporates the preceding paragraphs.

4

27. The terms of the Separation Agreement were an offer provided by MHC and Dr. Stockman to Dr. Nasir.

28. Dr. Nasir accepted the terms of the Separation Agreement and provided an executed version to Dr. Stockman.

29. The Separation Agreement is an enforceable contract.

30. A party to the Separation Agreement is the "Employer," defined as MHC and Dr. Stockman, collectively. (**Ex. A**, Separation Agreement at Recital D.)

31. Under the Separation Agreement, the "Employer" agreed to pay Dr. Nasir $65,000 for past due wages. (**Ex. A**, Separation Agreement at ¶2.)

32. MHC and Dr. Stockman, in breach of the Separation Agreement, failed to pay Dr. Nasir the $65,000 in past due wages.

33. Dr. Nasir is entitled to recover damages for MHC and Dr. Stockman's breach of the Separation Agreement, including but not limited to the $65,000 due and owed, plus liquidated damages and attorney fees.

WHEREFORE, Dr. Nasir respectfully requests this honorable Court enter Judgment in his favor and against Defendants MHC and Dr. Stockman, in the amount in excess of $65,000 to which he is entitled, plus costs, interest, and attorneys' fees, and any other relief the Court deems proper.

**COUNT II – BREACH OF EMPLOYMENT AGREEMENT**
**(MHC – in the alternative)**

34. Dr. Nasir incorporates the preceding paragraphs.

35. Dr. Nasir asserts in Count I above that the Separation Agreement is enforceable and therefore he is owed $65,000 in past wages.

5

36.     If, however, MHC alleges the Employment Agreement was not superseded by the Separation Agreement, then MHC breached the Employment Agreement by failing to pay Dr. Nasir the following wages based on services rendered through January 19, 2023:

- 60% of Plaintiff's collections for Dr. Nasir's services, paid pursuant to twice monthly draws of $2,500 (Employment Agreement, Section 2.B);

- 10% of Plaintiff's collections for dermatology services provided by mid-level staff, paid 60-90 days in relation to the twice monthly draws (*Id.*, Section 2.B); and

- Withholdings for Social Security and employment taxes (*Id.*, Section 2.C)

37.     The Employment Agreement is not attached hereto, as it is in the possession of both parties and attached to the Complaint.

WHEREFORE, Dr. Nasir respectfully requests this honorable Court enter Judgment in his favor and against Defendants MHC and Dr. Stockman, in the amount to which he is entitled, plus costs, interest, and attorneys' fees, and any other relief the Court deems proper.

### COUNT III - COMMON LAW NON-PAYMENT OF WAGES
### (MHC and Dr. Stockman – in the alternative)

38.     Dr. Nasir incorporates the preceding paragraphs.

39.     In the alternative to Counts I and II, provided that Defendants disclaim liability or enforceability of the Separation Agreement or the Employment Agreement, then Defendants are jointly and severally liable to Dr. Nasir for unpaid wages under Michigan law.

40.     MHC and Dr. Stockman were required to pay Dr. Nasir all wages earned and due as soon as the amount was determined after the employment term ended on January 19, 2023. (MCL §408.475.)

41.     Michigan law, including MCL §408.419, allows an unpaid employee, such as Dr. Nasir, to bring suit to recover the amount past due and an additional amount as liquidated damages, together with costs and reasonable attorney fees.

42.     Dr. Nasir was employed by MHC and Dr. Stockman from January 1, 2022 through January 19, 2023.

43.     Dr. Nasir was not paid the wages earned on January 19, 2023, the end of the employment term.

44.     MHC and Dr. Stockman's failure to pay Dr. Nasir included an intent to defraud.

45.     MHC and Dr. Stockman owe Dr. Nasir past due wages.

WHEREFORE, Dr. Nasir respectfully requests this honorable Court enter Judgment in his favor and against Defendants MHC and Dr. Stockman, in the amount to which he is entitled, plus costs, interest, and attorneys' fees, and any other relief the Court deems proper.

### COUNT IV - ACCOUNTING
### (MHC and Dr. Stockman)

46.     Dr. Nasir incorporates the preceding paragraphs.

47.     Provided that Defendants disclaim liability or enforceability of the Separation Agreement, then Defendants are liable for non-payment of wages under Michigan law.

48.     Dr. Nasir made multiple demands to MHC and Dr. Stockman for records necessary to determine the total owed to Dr. Nasir based on services performed, as outlined in the Employment Agreement.

49.     Despite Dr. Nasir's requests, MHC and Dr. Stockman have refused.

50.     It is necessary that MHC and Dr. Stockman's books and records be made available to Dr. Nasir so the amount of wages, calculated by a percentage of services rendered and collected, may be determined.

7

WHEREFORE Dr. Nasir requests this Court to order MHC and Dr. Stockman to make available their books and records, and other such other relief as is just and equitable, plus costs, interest, and attorney fees.

/s/ Brad A. Danek
Brad A. Danek (P72098)
Brooks Wilkins Sharkey & Turco
401 S. Old Woodward Ave, Suite 400
Birmingham, MI 48009
(248) 971-1800
danek@bwst-law.com

## VERIFICATION

The undersigned certifies that he has read the statements of fact as set forth in this complaint, that he has personal knowledge of those facts, and that the statements are true to the best of his information, knowledge, and belief.

Dr. Wasim Nasir

VLADIMIR GJOKA
Notary Public - State of Michigan
County of Wayne
My Commission Expires Nov 15, 2024
Acting in the County of Wayne

Subscribed and sworn before this 24th day of May, 2023.

Vladimir Gjoka

NOTARY PUBLIC
My Commission Expires: 11/15/2024
Acting in Wayne County, MI

8

**CERTIFICATE OF SERVICE**


I hereby certify that on June 20, 2023, I served the foregoing on the attorneys of record via email and via the United States Post Office.


<u>*/s/ Brad A. Danek*</u>
Brad A. Danek (P72098)

9

# EXHIBIT A

## EMPLOYMENT SEPARATION AGREEMENT
## AND RELEASE OF EMPLOYER LIABILITY

This Employment Separation Agreement and Release of Employer Liability ("Agreement") is entered into and effective on April 3, 2023, between Waim Nasir, M.D., an individual ("Employee"), and Michigan Health Clinics, P.C., a Michigan professional corporation ("Employer"). Employee and Employer are each a Party and are collectively referred to as the Parties.  Employee and Employer agree as follows.

## DEFINITIONS AND GENERAL TERMS

The Parties agree to the following definitions for use in this Agreement, which are incorporated into this Agreement by reference.

A.      The term "Agreement" means this Employment Separation Agreement and Release of Employer Liability.

B.      The term "Effective Date" means April 3 2023.

C.      The term "Employee" means Wasim Nassir, M.D., and all of his heirs, family members, executors, accountants, administrators, attorneys, agents, assigns, successors, and representatives.

D.      The term "Employer" means Michigan Health Clinics, P.C., and all of its affiliates, successors, predecessors, assigns, subsidiaries, divisions and all of its and their past and present members, owners, directors, officers, trustees, employees, and agents (in their individual and representative capacities).

E.      The term "Employment Agreement" means the signed Employment Agreement between Waim Nasir, M.D. and Michigan Health Clinics, P.C., dated on or about and effective as of January 1,  2022.  Pursuant to the terms of the Employment Agreement, Employee served as the Medical Director of Employer, which included his oversight of the Employer's dermatology practice.

F.      On or about January 1, 2022, Employee and Employer entered into an Employment Agreement.

G.      Employee and Employer have agreed to end their employment relationship.

H.      Employee and Employer desire and agree that this Agreement provides the terms of termination of their employment relationship.

## PRIMARY TERMS OF AGREEMENT

NOW THEREFORE, in consideration of the promises, representations, and mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by Employee and Employer, it is agreed as follows:

1.      Termination of Employment.   Employee's employment with Employer is terminated effective January 19 2023, (the "Termination Date"),  the date of his  written resignation.

2.      Acknowledgement of Receipt of Final Payment to Employee.   Through the signature below, Employee acknowledges and agrees that on the Effective Date he received a full and final payment from Employer in the amount of $65,000 ("Final Payment").   Employee understands and agrees that the Final Payment includes any and all amounts to which he is entitled based on his employment with Employer, including pursuant to the services to be rendered pursuant to Section 1 and including any services rendered for Employer whether pursuant to the Employment Agreement or otherwise, including, but not limited to, all payments to which he may be entitled per the terms of the Employment Agreement.

3.      Intentionally Left Blank

4.      No UIA Benefits to Employee.  Employee agrees not to apply for unemployment benefits provided through the State of Michigan, Department of Licensing and Regulatory Affairs, Unemployment Insurance Agency ("UIA") under applicable law, MCL 421.29 et seq. ("UIA benefits").  Employee understands that Employer would and will object to Employee's filing of a claim for UIA benefits for the reasons noted in this Agreement, among other potential reasons.

5.      Employee Responsible for Taxes Related to Full and Final Payment.  Employee shall be responsible for payment of all required taxes any other obligations or liabilities arising from receipt of the Final Payment under this Agreement.

6.      Reaffirmation of the Covenant Not to Compete, the Non-Solicitation of Employees and the Non-Disclosure of Confidential Information Section of the Employment Agreement. Through his signature below, Employee acknowledges, reaffirms, and agrees to abide by Section 10 of the Employment Agreement, entitled "Covenant Not to Compete, the Non-Solicitation of Employees and the Non-Disclosure of Confidential Information" and that the provisions of said Section 10 shall survive termination of Employee's employment with Employer and are incorporated by reference.  It is agreed that in the event Employee violates this Section of this Agreement and/or Section 10 of the Employment Agreement, he is liable for the reasonable attorney fees incurred by Employer as a result. Employee agrees that he will not facilitate the hiring of any present or future employee and/or independent contractor of Employer by any entity, including any entity with which Employee becomes employed by, consults for, performs services in an independent contractor for and/or is otherwise affiliated and that the remedies for breach of this provision are those as set forth at this Section 6 and Section 10 of the Employment Agreement.

7.      Release of Employer by Employee. A. Subject to the duties  and/or obligations of Employer to Employee as stated in this Agreement and in consideration of the terms set forth in this Agreement, Employee fully and forever releases, acquits, and discharges Employer from and for all claims, actions, suits, charges, grievances, and/or causes of action, in law or in equity, existing by reason of and/or based upon any fact or set of facts, known or unknown, existing prior to and through the Effective Date this Agreement, whether known or unknown, monetary and/or

non-monetary, suspected or unsuspected, including, but not limited to, all claims, actions, suits, charges, grievances, and/or causes of action for overtime compensation, liquidated damages, commissions, bonuses, compensation, sums of money, damages of every type, costs, attorney fees, judgments, executions, wrongful discharge, breach of contract, breach of implied contract, breach of the covenant of good faith and fair dealing, tortious interference with contract or business relationships, assault, battery, invasion of privacy, tort of wrongful discharge, misappropriation of trade secrets, promissory estoppel, unjust enrichment, loss of consortium, violation of the penal statutes, violation of the Bullard-Plawecki Right to Know Act, negligent or intentional infliction of emotional distress, negligence, defamation, retaliation and/or discrimination and/or harassment on account of age, sex, gender, race, color, handicap/disability, marital status, height, weight, nationality or any other classification recognized under the discrimination laws which has been or could have been alleged under the common law, the civil rights statutes, the Elliott-Larsen Civil Rights Act, the Persons With Disabilities Civil Rights Act, the Wages and Fringe Benefits Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Family and Medical Leave Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act ("ERISA"), the Rehabilitation Act of 1973, the Whistleblowers' Protection Act, the Older Workers Benefits Protection Act ("OWBPA"), the Americans with Disabilities Act, any and all federal, state, and local statutes, ordinances, and laws, and every type of relief, (legal, equitable, and otherwise) available to Employee.  Employee acknowledges and agrees that this release is intended to and shall be construed broadly to release any and all claims which Employee may have against Employer, including, but not limited to, claims relating to and/or arising out of Employee's employment with Employer and/or the termination of employment with Employer. Employee covenants and agrees that she will not pursue or allege any claim, matter, or cause of action in violation of, and/or released under this Agreement.

B. Release of Employee by Employer. Subject to the duties and/or obligations of Employee to Employer as stated in this Agreement and in consideration of the terms set forth in this Agreement, Employer fully and forever releases, acquits, and discharges Employee from and for all claims, actions, suits, charges, grievances, and/or causes of action, in law or in equity, existing by reason of and/or based upon any fact or set of facts, known or unknown,  monetary and/or non-monetary, existing prior to and through the Effective Date this Agreement, whether known or unknown, suspected or unsuspected. Employer covenants and agrees that it will not pursue or allege any claim, matter, or cause of action in violation of, and/or released under this Agreement.

8.      No Initiation of Claims for Investigations Against Employer.  Employee represents that he has not filed any action, charge, suit, or claim against Employer with any federal, state, or local agency or court.  Employee further agrees that should any claims, charges, complaints, suits, or other actions be filed after the Effective Date of this Agreement on his behalf or as a result of any complaint or inquiry initiated by Employee or on his behalf, by any federal, state, or local agency or by any other person or entity, he will immediately withdraw with prejudice, or cause to be withdrawn with prejudice, and/or dismiss with prejudice, or cause to be dismissed with prejudice, any such claims, charges, complaints, suits, or other actions filed against Employer. Employee further agrees that, to the fullest extent permitted by law, Employee shall receive no relief of any type (monetary, equitable, or otherwise) with respect to, relating to, and/or on account of any such claims, matters, or actions.  Employee further agrees not to ask or authorize any other person or entity, including any governmental agency, to seek remedies against Employer via

**3** of **6**

administrative or legal proceedings.  Employee agrees to opt-out of any class action or collective action filed against Employer.

9.      Confidentiality.  To the fullest extent permitted by law, Employee  and Employer, each agrees to keep confidential all facts, opinions, and information which relate in any way to Employee's employment and/or cessation of employment with Employer, as well as the terms of this Agreement and the Employment Agreement between Employee and Employer.

10.      Employee Return of Employer Property and Non-Use of Employer Information.  Employee represents and warrants that he has returned to Employer any and all property, records, papers, documents, and writings, in whatever form, of Employer and/or regarding Employer's patients in Employee's possession and/or control, and that he has not retained any copies, in any form.  Employee also represents and warrants that he will not use or attempt to use Employer's and/or Employer's patients' information, property, records, papers, documents, and writings, in any form, and for any purpose, including, but not limited to, attempting to access or obtain information about Employer's and/or Employer's patients' financial accounts and/or confidential or non-confidential information and documents.

11.      No Wrongdoing by Employer and No Release of Employer Claims.  Nothing in this Agreement shall be construed as an admission of liability or wrongdoing by Employer and Employer denies all liability and wrongdoing.  Employee understands, acknowledges, and agrees that nothing in this Agreement or in the Employment Agreement between Employee and Employer constitutes a release of any claims of Employer against Employee, as all Employer rights and claims against Employee are reserved and survive execution and performance under this Agreement and the Employment Agreement.

12.      No Injury to Employee.  Employee acknowledges and represents that he did not suffer any physical or mental injury during the course of employment with Employer and that any such claims are released pursuant to Section 7 of this Agreement.

13.      Non-Participation in Claims Against Employer.  To the fullest extent permitted by law, Employee will not initiate, cooperate with, or assist in, any claim, charge, lawsuit, or arbitration against Employer, unless required to do so by a lawfully issued subpoena, by court order, or as expressly provided by regulation or statute.  In the event Employee is served with a subpoena or is required by court order or otherwise to testify in any type of proceeding involving Employer, Employee shall immediately advise Employer by e-mail and in writing of same in care of David Stockman M.D. to DStockman@chs-mi.com and Michigan Health Clinics, P.C, 4798 Wenmar Drive, Saginaw, MI 38604.

14.      No Disparagement.  Employee and Employer agree that they will not  directly and/or indirectly through third parties, defame, disparage, criticize, or otherwise speak of  the other, or  their respective representatives and services, in a negative, derogatory, or unflattering manner.  Employee and Employer also agree that under no circumstances may they disclose to any member of the public, including the media, any material, negative, or detrimental information relating to  the other, or  their respective representatives or services, including verbally, in writing and/or on social media.

**4** of **6**

15. <u>Employee Opportunity to Confer With Legal Counsel</u>.   Prior to signing this Agreement, Employee has had an opportunity to consult with an attorney of choice concerning the terms and conditions of this Agreement, with regard to any claim or right Employee may have under the ADEA, the OWBPA, at law, in equity, and/or otherwise.   Employee has been offered at least twenty-one (21) days to review and consider this Agreement.   Employee may and will voluntarily and knowingly waive this twenty-one (21) day period if he signs this Agreement prior to the expiration of twenty-one (21) days.   After signing this Agreement, Employee shall have seven (7) days from the signing date to revoke this Agreement.   This Agreement shall not be effective until after the seven (7) day revocation period has expired.   Any revocation shall be made by e-mail and in writing and delivered to DStockman@chs-mi.com and Michigan Health Clinics, P.C, 4798 Wenmar Drive, Saginaw, MI 38604.

16. <u>Employee Breach of Agreement</u>.   In addition to all Employer's rights and claims against Employee that are reserved under this Agreement, in the event Employee breaches this Agreement, Employer shall be entitled to the relief noted in this Agreement, the Employment Agreement and as provided by law, which shall include, but not be limited to, an award of reasonable attorney fees and costs.   Employee shall indemnify and hold harmless Employer from all claims, losses, damages, expenses, fees, including attorney fees, costs, and judgments that may be asserted or entered against Employer as a result of breach of this Agreement by Employee. Employee's payment of Employer's attorney fees under this Agreement shall include attorney and paraprofessional fees related to pre-litigation investigation, defense of legal or administrative proceedings, fees and costs related to appeal and any other legal or administrative processes.

17. <u>Applicable Law and Forum</u>.   Michigan law shall govern interpretation and enforcement of this Agreement, regardless of any choice of law or conflict of law provisions or rules (whether of the State of Michigan or any other jurisdiction) that might result in the application of the laws of any jurisdiction other than the State of Michigan.   Any action arising out of or in any way related to this Agreement, the Employment Agreement, and/or Employee's employment and termination of employment with Employer shall be brought only in either a state court located in Genesee County, Michigan, having jurisdiction over the action or the United States District Court for the Eastern District of Michigan.

18. <u>Severability</u>.   If any portion of this Agreement is determined to be unenforceable, all remaining portions of this Agreement shall remain valid.

19. <u>Integration and Modification of Agreement</u>.   This Agreement reflects the entire agreement between Employee and Employer relative to the subject matter addressed in this Agreement and supersedes all prior, contemporaneous, oral or written understandings, agreements, statements, representations, or promises; except, however, that Employee reaffirms his obligations contained in and pursuant to the Employment Agreement between Employee and Employer which Employee expressly acknowledges and agrees shall remain in full force and effect after the Effective Date of this Agreement.   This Agreement may not be amended, modified, waived, or terminated except in a writing signed by Employee and an authorized representative of Employer.

20.     No Employer Representations.  Employee represents and warrants that he is not relying on any representation, statement, or promise of Employer not set forth in this Agreement.

EMPLOYEE WITHOUT ANY DURESS OR COERCION FREELY, KNOWINGLY, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT, AND GIVES THE RELEASE TO EMPLOYER CONTAINED IN, THIS AGREEMENT.  EMPLOYEE UNDERSTANDS AND AGREES WITH ALL OF THE PROVISIONS AND THE TERMS STATED IN THIS AGREEMENT AND HAS BEEN AFFORDED SUFFICIENT AND REASONABLE TIME TO CONSIDER WHETHER TO ENTER INTO THIS AGREEMENT.  EMPLOYER ADVISED EMPLOYEE TO CONSULT WITH AN ATTORNEY OF EMPLOYEE'S CHOOSING PRIOR TO EXECUTING THIS AGREEMENT WHICH INCLUDES A GENERAL RELEASE OF EMPLOYER AND WAIVER OF EMPLOYEE CLAIMS.

Employee understands and                    Employer:
agrees to all of the above:                    Michigan Health Clinics, P. C.


*Wasim Nasir*
Wasim Nasir (Apr 3, 2023 11:41 EDT)
WASIM NASIR M.D.                              By: DAVID STOCKMAN, M.D.
                                             Its: President


Dated: __Apr 3, 2023__, 2023                 Dated: _____, 2023

**6** of **6**

# W. Nasir Separation Agreement.CLEAN

Final Audit Report                                                                                 2023-04-03

| | |
|---|---|
| Created: | 2023-04-03 |
| By: | Chase Howard (chase@floridahealthcarelawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAB_QIOYbHzpp-mM_aAJ8q6TVQo_1K84QG |

## "W. Nasir  Separation Agreement.CLEAN" History

Document created by Chase Howard (chase@floridahealthcarelawfirm.com)
2023-04-03 - 3:28:55 PM GMT

Document emailed to Wasim Nasir (wnasir3@gmail.com) for signature
2023-04-03 - 3:29:27 PM GMT

Email viewed by Wasim Nasir (wnasir3@gmail.com)
2023-04-03 - 3:39:42 PM GMT

Document e-signed by Wasim Nasir (wnasir3@gmail.com)
Signature Date: 2023-04-03 - 3:41:00 PM GMT - Time Source: server

Agreement completed.
2023-04-03 - 3:41:00 PM GMT

Names and email addresses are entered into the Acrobat Sign service by Acrobat Sign users and are unverified unless otherwise noted.

Adobe Acrobat Sign